

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

**GERALD C. MANN**
**ATTORNEY GENERAL**

Hon. Bert Ford, Administrator
Texas Liquor Control Board
Austin, Texas

Dear Sir:

Opinion No. O-1608
Re: May the Texas Liquor Control
Board draw upon the confiscated
beverage fund for the payment
of traveling expenses of inspectors
likewise paid from said fund?

Your request for an opinion upon the above
stated question has been received and considered by
this department.

We quote from your letter as follows:

"Section 30, Article 1, of the Texas
Liquor Control Act, dealing with the disposal
of funds derived from the sale of illicit
beverages, provides as follows:

'The net proceeds from all sales
as provided in this section shall be
placed in a separate fund by the Board
and may be used from time to time for
defraying such expenses as may be necessary
for the investigation of and obtaining evi-
dence for violations of the provisions of
this act.'

"This provision was written into the
liquor control act upon the recommendation
of this Board to provide a cushioning fund
for the payment of expenses that might arise
in the judgment of the Board in making in-
vestigations of violations of the act. Under
the general rule, of course, the appropria-
tion specifically made in the amended act
effective September 1, 1937, was no longer

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

available after September 1, 1939, but the Board made further recommendation to the Legislature for a rider to the general appropriation bill which was adopted and which you will find appearing in that section of the appropriation bill providing appropriations for the Liquor Control Board, reading as follows:

"'It is further provided that receipts from the sale of confiscated beverages and equipment as provided in the Texas liquor control act shall be available for defraying expenses as stipulated in said act, and the same are hereby appropriated for said purposes.'

"It is presumed that this rider to the appropriation act continued the effectiveness of the particular provision above referred to in the Texas Liquor control act.

"Currently this Board is drawing upon what is known as the 'Confiscated Liquor Fund,' for the payment of salaries of special investigators employed as the demand arises to supplement the work of our regular forces.

"We would like to know whether or not, in your opinion, since a seemingly broad exception to the general restrictions of the appropriation act is provided for this Board, the Board may draw upon the confiscated beverage fund for the payment of traveling expenses of inspectors likewise paid from said fund."

The general appropriation bill of the 46th Legislature of Texas provides appropriations for the Texas Liquor Control Board and we find in the section of the appropriation bill providing appropriations for the Texas Liquor Control Board the following rider, to-wit:

"It is further provided that receipts

from the sale of confiscated beverages and equipment as provided in the Texas Liquor Control Act shall be available for defraying expenses as stipulated in said act, and the same are hereby appropriated for said purposes."

Article 666-30, Vernon's Texas Annotated Penal Code, 1925, reads as follows:

"Any illicit beverage as that term is defined in this Act, and all illegal equipment for manufactureing any alcoholic beverages is hereby declared to be contraband and the same may be seized without warrant by the Board, or any one of its agents or employees or by any peace officer and any person found in the possession, or in charge thereof, may be arrested without warrant. All contraband alcoholic beverages so seized shall be turned over to either the sheriff of the county in which such seizure is made or to any authorized representative or agent of the Board.

"The Board shall have the power and authority to assemble seizures of alcoholic beverages and concentrate them at a place in this state where the sale thereof will be deemed most advantageous.

"All contraband alcoholic beverages remaining in the hands of the sheriff shall be sold by him at public auction to the highest bidder, after due notice of such sale has been posted for a period of at least ten (10) days, but no sale of liquor shall be made to any person unless he is a permittee who is privileged to have possession thereof. No delivery of liquor so sold shall be made to any permittee unless and until the proper State tax stamps have been purchased and affixed as required by this Act.

It is further provided that immediately after the sale as herein provided, no alcohlic beverage sold at public auction by a sheriff shall be delivered within a period of five (5) days after such sale during which time the

Board may in its discretion reject any bids
and order the liquor disposed of in any
manner herein provided.

"It is further provided however that
in all such instances where alcoholic bever-
ages are offered for sale at public auction
the Board shall have the right and authority
to bid thereon. In the event the Board is
the highest bidder such alcoholic beverages
shall be delivered to the Board after the
payment of the expenses of the sale only and
shall be sold by the Board as herein provided.

"All alcoholic beverages which may come
into the possession of the Board under the
provisions of this Section may be sold by the
Board at either public or private sale.

"All illegal equipment shall be destroyed;
provided, however, that such equipment which
possesses any appreciable value shall be made
incapable of further illegal use and may then
be sold by the Board or Administrator at pri-
vate sale.

"All costs and expense incidental to the
seizure, sale, and assembling of all contraband
illicit beverages and illegal equipment shall
be deducted from the proceeds of the sale there-
of.

"The net proceeds from all sales as pro-
vided in this Section shall be placed in a
separate fund by the Board and may be used from
time to time for defraying such expenses, as
may be necessary, for the investigation of and
obtaining evidence for violations of the provi-
sions of this Act. All money remaining in said
fund on August 31st of each year shall be de-
posited with the State Treasurer for the benefit
of the General Fund. The fund herein created
is hereby appropriated and shall be independent
of and in addition to any other appropriation

Hon. Bert Ford, Page 5

which may be made for the use of the Board."
(underscoring ours)

It will be noted that the above quoted section of the Texas Liquor Control Act provides that such fund may be used from time to time for defraying such expenses as may be necessary for the investigation of and obtaining evidence for the violations of the provisions of said Act.

It is obvious that the investigation of violations of the Texas Liquor Control Act and the obtaining of evidence of such violations require traveling. Very little, if any, investigation could be done, or evidence obtained with reference to violations of the Texas Liquor Control Act, without traveling. Traveling expenses of the investigators of the Texas Liquor Control Board would certainly therefore be a necessary expense in the investigation of and the obtaining of evidence of violations of the Texas Liquor Control Act.

Therefore, you are respectfully advised that it is the opinion of this Department that your question should be answered in the affirmative.

Very truly yours

ATTORNEY GENERAL OF TEXAS


By

Wm. J. Fanning
Assistant

WJF:AW

APPROVED NOV 20, 1939

(s) Gerald C. Mann

ATTORNEY GENERAL OF TEXAS

APPROVED
opinion committee
By    BWB
Chairman